UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

STEVEN J. WISEMAN,    )
            )
    Plaintiff,    )
            )
  vs.        )  Case No. 2:15 CV 85 ACL
            )
NANCY A. BERRYHILL,[1]   )
Acting Commissioner of Social Security, )
            )
    Defendant.    )

## MEMORANDUM AND ORDER

Plaintiff Steven Wiseman brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Wiseman's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. Procedural History

Wiseman filed his applications for DIB and SSI on March 4, 2013. (Tr. 158-71.) He alleged that he became disabled on June 8, 2012, due to left eye blindness, right hip pain, and right ankle problems. (Tr. 158-71, 210.) Wiseman's claims were denied initially. (Tr. 69-73.) Following an administrative hearing, Wiseman's claims were denied in a written opinion by an ALJ, dated October 24, 2014. (Tr. 19-27.) Wiseman then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on October 14, 2015. (Tr. 15, 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Wiseman first claims that the ALJ "erred in failing to properly analyze the opinion evidence of treating physician Trone in that the ALJ did not give good reasons for rejecting Dr. Trone's opinion that Plaintiff could only stand two hours out of an eight hour work day and sit two hours out of an eight hour work day and that Plaintiff would miss two or more days per month in that the ALJ did not consider the length of Plaintiff's treatment by Dr. Trone, the frequency of this examinations, the nature and extent of the treatment relationship, the supportability of Dr. Trone's opinion, the consistency of the opinion with the record as a whole, or Dr. Trone's specialization." (Doc. 17-1 at 16.) Wiseman next argues that the ALJ erred "in analyzing Plaintiff's credibility in that the ALJ did not point to any inconsistencies in Plaintiff's testimony that would logically detract from Plaintiff's allegation of disabling pain and therefore the ALJ's decision finding Plaintiff not disabled was not supported by substantial evidence on the whole record." *Id.* at 20. Finally, Wiseman argues that the "ALJ decision has affirmed by the Appeals Council it was not based on substantial evidence in that the Appeals Council did not

consider the evidence presented about Plaintiff's prescription for a cane and the Appeals Council did not consider the Medical Vocational Guidelines as to Plaintiff's eligibility under the Guidelines after his 55th birthday on April 15, 2015." *Id.* at 23.

## II. The ALJ's Determination

The ALJ first stated that Wiseman met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 21.) The ALJ found that Wiseman had not engaged in substantial gainful activity since his alleged onset date of June 8, 2012. *Id.*

In addition, the ALJ concluded that Wiseman had the following severe impairments: degenerative joint disease in the hip and ankle; blind left eye; and chronic obstructive pulmonary disease. *Id.* The ALJ found that Wiseman did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22.)

As to Wiseman's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit/stand option allowing him to sit or stand alternatively at will provided he is not off task for more than 10 percent of the work period. He cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs. He can occasionally stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to poorly ventilated areas. He must avoid all use of hazardous machinery, defined as unshielded, moving machinery and all exposure to unprotected heights. He is limited to occupations that do not require peripheral acuity. He is limited to occupations with no strict production quota with the emphasis being on a per shift, rather than a per hour basis. Meaning, the employer requires so many widgets per day versus so many widgets per hour.

(Tr. 23.)

The ALJ found that Wiseman's allegations regarding his limitations were not entirely credible.   (Tr. 24.)   In determining Wiseman's RFC, the ALJ indicated that he was assigning "partial weight" to the opinion of consultative examiner Dennis A. Velez, M.D.   *Id.*   The ALJ assigned "little weight" to the opinion of treating physician, Aaron M. Trone, D.O.   (Tr. 25.)

The ALJ further found that Wiseman is unable to perform any past relevant work.   (Tr. 26.)   The ALJ noted that a vocational expert testified that Wiseman could perform jobs existing in significant numbers in the national economy, such as garment sorter, folding machine operator, and lens matcher.   (Tr. 27.)   The ALJ therefore concluded that Wiseman has not been under a disability, as defined in the Social Security Act, from June 8, 2012, through the date of the decision.   *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on March 4, 2013, the claimant is not disabled as defined in sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on March 4, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to

support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial

evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal

quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . .

requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and
non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's
impairments.

6.   The testimony of vocational experts when required which is
based upon a proper hypothetical question which sets forth the
claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal

citations omitted).   The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached.   *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

### III.B.   Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the

claimant is disabled.  20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:  activities of daily living, social functioning, concentration, and persistence or pace.  *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  *See id.*  Next, the Commissioner must determine the severity of the impairment based on those ratings.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  *See id.*  If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Wiseman argues that the ALJ erred in evaluating the opinion of treating physician Dr. Trone, and in assessing the credibility of Wiseman's subjective complaints. Wiseman also contends that the Appeals Council erred in failing to consider evidence he submitted after the ALJ's decision, and in failing to consider his eligibility under the Medical Vocational Guidelines. The undersigned will discuss these claims in turn.

### 1. Dr. Trone's Opinion

Dr. Trone completed a Physical Residual Functional Capacity Questionnaire on April 23, 2014. (Tr. 298-301.) Dr. Trone expressed the opinion that Wiseman could frequently lift or carry five pounds, and occasionally lift or carry ten pounds; stand or walk continuously for thirty minutes, and stand or walk a total of two hours; sit continuously for twenty minutes, and sit a total of two hours; is unable to push or pull for lengthy periods of time; can never crouch; can occasionally climb, balance, stoop, kneel, and bend; and is limited in his ability to reach, handle, see, and hear. (Tr. 298-99.) Dr. Trone found that Wiseman's pain or other symptoms would frequently interfere with attention and concentration needed to perform even simple work tasks, and that he would be expected to miss work two or more days a month due to his chronic back and neck pain. (Tr. 300.) Dr. Trone also indicated that assuming reclining and supine positions for up to thirty minutes one to three times a day would be necessary to help control his pain. *Id.*

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). Opinions from medical sources who have treated a claimant typically receive more weight than opinions from one-time examiners or non-examining sources. *See* 20 C.F.R. § 416.927(c)(1)–(2). However,

the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. *See Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). The treating physician's opinion should be given controlling weight when it is supported by medically acceptable laboratory and diagnostic techniques and it must be consistent with other substantial evidence in the case record. *Hacker v. Barnhart*, 459 F.3d 935, 937 (8th Cir. 2006). *See also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (listing '[s]upportability" as a factor to be considered when weighing medical opinions). Inconsistencies may diminish or eliminate weight given to opinions. *Hacker*, 459 F.3d at 937. *See also Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (holding that a treating physician's opinion "may have 'limited weight if it provides conclusory statements only, or inconsistent with the record'") (quoting *Samons v. Astrue,* 497 F.3d 813, 818 (8th Cir. 2007)). An ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermines the credibility of such opinions." *Id.* (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)).

If an ALJ declines to ascribe controlling weight to the treating physician's opinion, she must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). Whether the ALJ grants the treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). "Failure to provide good reasons for discrediting a

treating physician's opinion is a ground for remand." *Reed v. Barnhart*, 399 F. Supp.2d 1187, 1194 (E.D. Mo. 2004).

The ALJ stated that he was assigning "little weight" to Dr. Trone's opinion because it "is not supported by the claimant's physical examination findings from 2013 through 2014 that do not reflect difficulty with ambulation." (Tr. 25.) He further found that the opinion was unsupported by Dr. Velez's findings. *Id.*

The ALJ acknowledged that Dr. Trone was Wiseman's treating physician in 2013 and 2014. The ALJ summarized Dr. Trone's treatment notes, noting that physical examinations revealed tenderness to palpation in Wiseman's spine, and on one occasion tenderness and instability in his right ankle, but no difficulty ambulating and normal muscle strength. (Tr. 25, 335-63.) Dr. Trone's treatment notes, which are discussed below, support the ALJ's findings.

Wiseman saw Dr. Trone on June 11, 2013, with complaints of multiple arthritic joints, pain in the right ankle and right hip, and pain in the tailbone. (Tr. 335.) Wiseman reported the following history of injuries: a motorcycle accident in 1982 resulting in a severe ankle and leg sprain, a tailbone injury when he was a child, falls off skateboards as a teenager, a fall from a ladder as a young adult onto his tailbone, and a fall onto his right hip two years prior. *Id.* Wiseman also complained of chronic shortness of breath, but denied chest pain, palpitations, coughing, or wheezing. *Id.* Wiseman's past medical history was significant for chronic obstructive pulmonary disorder ("COPD"), elevated blood pressure without diagnosis of hypertension, and low back pain. *Id.* Upon physical examination, Wiseman was in no acute distress, his cardiovascular examination was normal, he had no tenderness of the upper extremity, or the left lower extremity, and full motor strength. (Tr. 336-37.) Dr. Trone noted diminished breath sounds, tenderness to palpation of the spine, and chronic tenderness and instability of the

right ankle.  *Id.*   He diagnosed Trone with low back pain, COPD, and elevated blood pressure without diagnosis of hypertension.   (Tr. 337.)   Dr. Trone ordered lumbar spine and chest x-rays, and prescribed Mobic.[2]  *Id.*

On June 19, 2013, Wiseman reported continued pain in his low back and right hip joint. (Tr. 338.)   Upon examination, Dr. Trone noted tenderness to palpation of the spine.   (Tr. 339.) Wiseman complained of pain with palpation over the right hip joint.   *Id.*   Dr. Trone diagnosed Wiseman with low back pain; and hip pain-pain in joint, pelvic region and thigh.   (Tr. 340.)   On July 17, 2013, Dr. Trone assessed COPD, and low back pain, and prescribed Tramadol.[3]   (Tr. 342-43.)   On October 2, 2013, Wiseman complained of low back pain, which he rated as a three out of ten; and neck pain, which he rated as a seven.   (Tr. 346.)   Dr. Trone noted that Wiseman had seen an orthopedist for his hip, who prescribed exercises and ice.   *Id.*   Wiseman had also undergone a CT scan, which revealed interstitial lung disease.   *Id.*   Upon physical examination, Wiseman had normal cervical range of motion, regular breathing, and tenderness to palpation of the cervical and lumbar spine.   (Tr. 347.)   Dr. Trone diagnosed Wiseman with low back pain, interstitial emphysema,[4] and cervicalgia.[5]   *Id.*   He prescribed Mobic.   *Id.*   On October 14, 2013, Wiseman saw Dr. Trone "for disability paper work."   (Tr. 349.)   Dr. Trone noted that Wiseman was blind in the left eye, and that he had an appointment scheduled to test his hearing. *Id.*   Dr. Trone noted tenderness to palpation of the spine.   (Tr. 350.)   His assessment was interstitial emphysema and low back pain.   (Tr. 351.)   Wiseman saw Dr. Trone on December 6,

[2]Mobic is a nonsteroidal anti-inflammatory drug indicated for the treatment of arthritis.   *See* WebMD, http:// www.webmd.com/drugs (last visited March 6, 2017).
[3]Tramadol is indicated for the treatment of moderate to moderately severe pain.   *See* WebMD, http:// www.webmd.com/drugs (last visited March 6, 2017).
[4]Interstitial emphysema is the presence of air outside the normal air passages, and inside the pulmonary tissues.   *Stedman's Medical Dictionary*, 632 (28th Ed. 2006).
[5]Neck pain.   *See Stedman's* at 351.

2013, for complaints of high blood pressure. (Tr. 352.) Dr. Trone found no abnormalities upon examination. (Tr. 353.) He noted that Wiseman's gait was normal, and he was able to stand without difficulty. *Id.* Dr. Trone diagnosed Wiseman with benign hypertension. *Id.* On January 17, 2014, Wiseman complained of increased lower back pain. (Tr. 358.) He was taking Mobic and Tramadol and "doing ok with those." *Id.* Dr. Trone assessed low back pain. (Tr. 359.) Wiseman complained of muscle cramps over the past few weeks on February 10, 2014. (Tr. 61.) Dr. Trone's assessment was benign essential hypertension. (Tr. 362.) On April 23, 2014, Wiseman presented with complaints of low back pain that was not dulled by Tramadol, and brought disability forms for Dr. Trone to complete. (Tr. 375.) Dr. Trone noted reduced range of motion of the neck and tenderness to palpation of the spine. (Tr. 376.) He diagnosed Wiseman with cervicalgia and low back pain, and continued the Mobic and Tramadol. *Id.* On July 1, 2014, Wiseman complained of worsening back, leg, and foot pain. (Tr. 378.) He reported that he had seen an orthopedist and had done some exercises that seemed to help his hip quite a bit. *Id.* Upon examination, Dr. Trone noted tenderness to palpation of the spine. (Tr. 379.) His assessment was low back pain. (Tr. 380.) On July 17, 2014, Wiseman reported that he had become dizzy and fallen the previous night, resulting in right wrist pain. (Tr. 381.) Dr. Wiseman noted tenderness to palpation over the right wrist, with no obvious bony deformity. (Tr. 382.) He advised Wiseman to obtain x-rays, and get a wrist splint. *Id.* On July 31, 2014, Dr. Trone noted tenderness to palpation of the spine. (Tr. 385.) His assessment was low back pain; and hip pain-pain in joint, pelvic region, and thigh. *Id.*

Dr. Trone's treatment notes do not support the extreme limitations found in his April 2014 opinion. (Tr. 298-301.) Dr. Trone found that Wiseman had significant difficulty standing and walking, could only lift five pounds frequently, and was required to assume reclining and supine

positions for up to thirty minutes one to three times a day.   (Tr. 299-300.)   There is nothing in Dr. Trone's treatment notes, however, to support such limitations.   As the ALJ noted, Dr. Trone found that Wiseman's gait was normal, and he was able to stand without difficulty in December 2013, just four months before he provided his opinion.   (Tr. 353.)   Dr. Trone also consistently found that Wiseman had full strength in his upper extremities.   The only abnormalities Dr. Trone routinely noted was tenderness on palpation of the spine.

It was not until after Dr. Trone provided his opinion that any abnormalities regarding Wiseman's gait were noted.   Evidence Wiseman submitted to the Appeals Council after the ALJ's decision included records from Missouri Orthopaedic Institute, which note Wiseman's gait was "slightly unsteady [and] he does walk with a cane" on July 22, 2014.   (Tr. 407.)   On August 12, 2014, Dr. Trone prescribed a quad cane due to "gait abnormality, hip pain."   (Tr. 391.) Wiseman returned to Missouri Orthopaedic Institute on August 19, 2014, at which time it was noted Wiseman had an "antalgic gait favoring his right lower extremity."   (Tr. 420.)   Wiseman's July 2014 MRI revealed a small disc bulge at L4-5, but it was "unlikely that is the source of his pain."   *Id.*   Wiseman was directed to follow-up with his primary care provider for evaluation and treatment of his hip pain.   (Tr. 421.)

The ALJ also properly pointed out that Dr. Trone's opinions were inconsistent with the findings of consultative examiner Dr. Velez.   Dr. Velez saw Wiseman on April 27, 2013, at which time he complained of pain in his ankle and left hip.   (Tr. 287.)   Wiseman reported that he had experienced hip pain since an incident in 2011, where he slipped and fell on his tailbone.   *Id.*   He never went to the hospital or a physician for treatment of this injury.   *Id.*   Wiseman reported ankle pain since a motorcycle accident in the 1980s.   *Id.*   Upon physical examination, Wiseman could not see in the left eye on visual acuity testing, his gait and stance were normal, he had no

tenderness to palpation or limitation on range of motion of the right ankle, he was able to squat and rise from that position, walk on his heels and toes, he had slight limitation on range of motion of the left hip with tenderness, and there was some possibility of left hip arthralgia. (Tr. 288-91.) Dr. Velez diagnosed Wiseman with possible left hip arthralgia, and blindness in the left eye since birth. (Tr. 291.) Dr. Velez found that Wiseman "would not have limitations as far as sitting, standing or walking." *Id.* He further found that Wiseman "would not have any problems with lifting or carrying although he may be slow squatting more than two thirds of the time due to possibility of left hip arthralgia." *Id.* Dr. Velez stated that Wiseman may have problems with visual fields in the left side secondary to his blindness. *Id.*

As the ALJ found, Dr. Trone's opinion is unsupported by the findings on examination of Dr. Velez. Dr. Velez found only a slight limitation of range of motion of the left hip. He expressed the opinion that Wiseman had no limitations except in his ability to squat and see out of the left side, whereas Dr. Trone found Wiseman was incapable of performing even sedentary work. It is the ALJ's function to resolve such conflicts among the treating and examining physicians. *Tindell,* 444 F.3d at 1005. Consistent with this duty, the ALJ weighed the differing opinions and found that Wiseman was more limited than Dr. Velez, yet not as limited as Dr. Trone.

The ALJ also discussed the results of imaging. For example, Wiseman underwent x-rays of the lumbar spine and right hip on June 14, 2013, which revealed no abnormalities. (Tr. 303, 305.) A chest x-ray Wiseman underwent on September 24, 2013, revealed only "mild" thoracic spondylosis. (Tr. 306.) An x-ray of the lumbosacral spine Wiseman underwent on July 14, 2014 noted "mild" L5-S1 degenerative disc disease, with partial left-sided sacralization[6] of L5 with

---

[6]Sacralization is a congenital abnormality in which the lumbar vertebra gets fused or semi-fused with the sacrum. *See Stedman's* at 1911.

assimilation arthritis. (Tr. 370.) In addition, evidence submitted after the ALJ's decision includes a July 2014 MRI of the lumbar spine, which revealed "multilevel degenerative changes however no right foraminal stenosis to go on with patient's complaints." (Tr. 408.)

The undersigned finds that the ALJ provided sufficient reasons for assigning little weight to the opinion of Dr. Trone. The ALJ found that the extreme limitations found by Dr. Trone were inconsistent with other evidence of record, including objective testing and the observations and opinions of examining physician Dr. Velez. *See Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014); *Martise*, 641 F.3d at 927. Dr. Trone's opinions were also unsupported by his own treatment notes. *See Davidson v. Astrue*, 501 F.3d 987, 990-91 (8th Cir. 2007) (affirming an ALJ's decision to discount a physician's later opinion on a plaintiff's conditions where the physician's "treatment notes, recorded over the course of two years, contain few hints of the serious physical limitations that [the physician] would later attribute to" the plaintiff).

The ALJ concluded that Wiseman was limited to a range of light work. (Tr. 25.) Due to Wiseman's allegations of chronic pain, the ALJ found that he required a sit/stand option allowing him to sit or stand alternatively at will provided he is not off task for more than ten percent of the work period. *Id.* He also found that Wiseman cannot climb ladders, ropes, or scaffolds, can only occasionally climb ramps or stairs; and stoop, kneel, crouch, and crawl. *Id.* Due to Wiseman's symptoms of COPD, the ALJ found that he must avoid concentrated exposure to poorly ventilated areas. *Id.* Because Wiseman is blind in his left eye, he was limited to occupations that do not require peripheral acuity. *Id.* He must also avoid all use of hazardous machinery. *Id.* Finally, the ALJ limited Wiseman to occupations with no strict production quotas due to his combined symptoms. *Id.*

"The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)). *See also Anderson v. Shalala,* 51 F.3d 777 (8th Cir. 1995).

The Court finds that the ALJ's decision is supported by substantial evidence in the record, including medical evidence, and that he accorded proper weight to the treating physician's opinions. The ALJ provided a detailed explanation of his RFC finding. In determining Wiseman's RFC, the ALJ accounted for Wiseman's complaints of chronic pain in limiting him to light work with a sit/stand option, and many postural limitations. The ALJ also included limitations related to Wiseman's COPD and left eye blindness. The RFC formulated by the ALJ was significantly more restrictive than the opinion of Dr. Velez and adequately took into consideration the effect of Wiseman's multiple impairments.

## 2.     Credibility Analysis

Wiseman next contends that the ALJ erred in discrediting his subjective allegations of disabling pain.

In assessing a plaintiff's subjective complaints, an ALJ is required to examine (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ may disbelieve a claimant's subjective reports due to inherent inconsistencies or other circumstances. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the Court should defer to the ALJ's

credibility determination." *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

The ALJ here identified many reasons to support his findings concerning Wiseman's subjective complaints, including the minimal objective findings, Wiseman's ability to work for many years with his impairments, and his daily activities. (Tr. 24-25.)

As previously discussed, the objective medical evidence reveals minimal findings. Imaging studies noted no abnormalities of the right hip or lumbar spine in June 2013, mild thoracic spondylosis, and mild interstitial lung disease. A July 2014 x-ray of the lumbosacral spine submitted after the ALJ's decision revealed "mild" L5-S1 degenerative disc disease and a congenital abnormality. Wiseman's motor and sensation testing were consistently normal, and no gait abnormalities were noted. An ALJ is entitled to consider a lack of objective findings to support Plaintiff's allegations about his physical impairments in determining the credibility of such allegations. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004).

The ALJ also pointed out that Wiseman's hip and ankle pain related to injuries that he sustained in his childhood, as well as in a motorcycle accident in 1982. (Tr. 24.) Wiseman's left eye blindness existed since birth. *Id.* When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. *See Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir.1990). *See also Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years.").

Wiseman argues that the ALJ erred in failing to discuss his good work record. It is true the ALJ did not discuss Wiseman's positive work history. Contrary to Wiseman's argument, however, the ALJ was not required to discuss how every *Polaski* factor related to Wiseman's

credibility in his decision. *Samons v. Apfel,* 497 F.3d 813, 820 (8th Cir. 2007). Further, as discussed above, although Wiseman has a good work history, he was able to work with his impairments.

The ALJ next discussed Wiseman's daily activities. He stated that, although Wiseman testified at the hearing that he does little all day but recline to relieve his pain, he indicated in his March 2013 function report that he was capable of performing household chores, such as sweeping floors, washing dishes, preparing simple meals, and washing laundry. (Tr. 24, 241-48.) The ALJ stated that there was no objective evidence to suggest his condition worsened since that time. (Tr. 24.) Wiseman argues that his ability to perform household chores is not inconsistent with his allegations of disability. While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed*, 399 F.3d at 923 (internal quotation marks omitted), his daily activities may nonetheless be considered in assessing the credibility of his complaints. *See Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007). The ALJ did not err in considering Wiseman's daily activities, and finding his reported activities inconsistent with his subjective complaints alleged at the hearing.

Finally, the ALJ noted that Wiseman used a cane for ambulation when he appeared for the hearing, however, there was no prescription for a cane in the record nor was there evidence that Wiseman had difficulty ambulating. (Tr. 24.) Wiseman argues that the ALJ's finding was erroneous because "further research after the hearing did reveal that on August 12, 2014 (well before the hearing on September 23, 2014) Plaintiff was prescribed a cane by his treating physician because of 'gait abnormality and hip pain.'" (Doc. 17-1 at 21, citing Tr. 283-91.) The ALJ's statement, however, was accurate at the time he rendered his decision. At the time of the decision, there was no evidence in the record of a prescription for a cane or of difficulty

ambulating. The new evidence Wiseman submitted to the Appeals Council one month after the ALJ's decision will be discussed further with regard to Wiseman's next argument.

Although the ALJ perceived Wiseman's pain behavior was "exaggerated" (Tr. 24) based on his use of a cane at the time of the hearing, when there was no evidence in the record to support the cane had been prescribed to Wiseman, the ALJ's credibility determination was not based on that alone. Notwithstanding that determination, the ALJ thoroughly explained his findings and the inconsistencies in the record upon which he based the credibility determination. Because the ALJ pointed to substantial evidence in the record supporting his decision to discount Wiseman's subjective allegations, the Court defers to the ALJ's credibility finding. *See e.g., Casey*, 503 F.3d at 696.

**3.       Appeals Council's Decision to Deny Review**

Wiseman argues that the Appeals Council erred in failing to consider new evidence, and in failing to consider Wiseman's eligibility under the Medical-Vocational Guidelines.

Wiseman first argues that the Appeals Council did not consider the cane prescription written by Dr. Trone on August 12, 2014. (Tr. 391.) The Appeals Council did in fact consider this evidence and found that it did not change the weight of the evidence in the record as a whole. The Appeals Council stated, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council." (Tr. 2.) The Order listed as one of the exhibits: "Treatment notes from Aaron Trone, D.O., dated August 12, 2014." (Tr. 5.) The Appeals Council then found that the additional evidence "[did] not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2.) Thus, "[w]here ... the Appeals Council considers new evidence but denied review, [the Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a

whole, including the new evidence." *Davidson,* 501 F.3d at 990.

Wiseman alleges disability beginning on June 8, 2012. The relevant time period in this case, therefore, is from June 8, 2012, through the ALJ's decision on October 24, 2014. The record before the ALJ contained Dr. Trone's treatment notes from June 2013 through July 2014. As previously discussed, neither Dr. Trone's treatment notes nor any other medical evidence in the record at the time of the ALJ's decision documented any difficulty with ambulation or other significant abnormalities on examination. Dr. Velez found that Wiseman had no limitations in his ability to sit, stand, walk, or lift. The new evidence of the prescription for a cane written one month prior to the hearing and two months prior to the decision does not change the weight of the evidence in the record. As Defendant accurately points out, Wiseman must show that his disability lasted or was expected to last for twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(C)(i). Further, the new evidence Wiseman submitted to the Appeals Council included a July 2014 MRI of his spine that showed degenerative changes, but no right foraminal stenosis to correlate with Wiseman's complaints. (Tr. 408.) Thus, the ALJ's decision is supported by substantial evidence, including the new evidence submitted to the Appeals Council.

Wiseman also contends that the Appeals Council failed to consider whether he would have met Rule 202.04 of the Medical-Vocational Guidelines when he attained age 55 on April 15, 2015. Once again, the relevant time period for the claim considered by the Appeals Council ended on October 24, 2014. *See* 20 C.F.R. §§ 404.970(b) and 416.1470(b) ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."). If Wiseman believes he became disabled after the date of the ALJ's decision, then the proper course of action is to file a new application for benefits.

In sum, although there is conflicting evidence in this case, the ALJ's decision denying benefits was within the "zone of choice." *Hacker*, 459 F.3d at 936. Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

Dated: <u>March 23, 2017</u>

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE